No. 15-1552

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

THE SHANE GROUP, ET AL.,

*Plaintiffs-Appellees,*

v.

BLUE CROSS BLUE SHIELD OF MICHIGAN,

*Defendant-Appellee*, CHRISTOPHER ANDREWS,

*Objector-Appellant*

SCOTT MANCINELLI,

*Objector-Appellant*,

ADAC AUTOMOTIVE, ET AL.

*Objectors-Appellants*.

On Appeal from the United States District Court
for the Eastern District of Michigan, Southern Division,
No. 02:10-cv-14360-DPH-MKM

**BRIEF OF APPELLANT SCOTT MANCINELLI**

Scott Mancinelli
156 West Washington Avenue
Zeeland, MI 49464

## **CORPORATE DISCLOSURES**

Pursuant to 6th Cir. R. 26.1, Scott Mancinelli makes the following disclosures:

1.      Mancinelli is not a subsidiary or affiliate of a publicly owned corporation.

2.      There is no publicly owned corporation, not a party to the appeal that has a financial interest in the outcome.

# **<u>TABLE OF CONTENTS</u>**

**Page**

TABLE OF AUTHORITIES ...................................................................4

JURISDICTIONAL STATEMENT ........................................................5

STATEMENT OF ISSUES FOR REVIEW ............................................6

STATEMENT OF THE CASE ...............................................................7

SUMMARY OF ARGUMENT ............................................................11


ARGUMENT ......................................................................................15

   I.   Standard of Review ................................................................ 15

   II.   The Settlement Fund is Grossly Inadequate……………………………15

   III.   The Claims Process is Unreasonably Burdensome…………………….16

   IV.   The Settlement Notification Process Was Inadequate……………………17

   V.   The Settlement Improperly and Unnecessarily Includes a
       Cy Pres Award........................................................................18

   VI.   The Settlement Gives Preferential Treatment to Class Counsel with an
       Excessive Fee Award……………………………………………………..22

CONCLUSION………………………………………………………….24

RULE 32(a)(7)(C) CERTIFICATION……………………………………….25

CERTIFICATE OF SERVICE………………………………………………27

ADDENDUM OF DESIGNATIONS OF RELEVANT DISTRICT

COURT DOCUMENTS…………………………………………………..28

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Dennis v. Kellogg Co.,* 697 F.3d 858, 865 (9th Cir. 2012). .............................. 19, 21

*Fidel v. Farley,* 534 F.3d 508, 513 (6th Cir.2008). ..................................................15

*Grant v. Bethlehem Steel Corporation*, 823 F.2d 20, 23 (2d Cir. 1987) ........21

*Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 122 (8th Cir.1975) ...................17

*In re Baby Products Antitrust Litig.*, 708 F.3d 163, 173 (3d Cir. 2013). ...............18

*In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935 (9th Cir.2011) .............23

*In re Dry Max Pampers Litigation,* 724 F.3d 713 (6th Cir.2013) ...........................23

*Marek v. Lane,* ⸺ U.S. ⸺, 134 S.Ct. 8, 9, 187 L.Ed.2d 392 (2013)
(Roberts, C.J.) .........................................................................................................20

*Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 784–85 (7th Cir. 2004) ................19

*Mullane v. Cent. Hanover* Bank & Trust Co., 339 U.S. 306, 314,
70 S.Ct. 652, 94 L.Ed. 865 (1950). ........................................................................17

*Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011)................................18

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 654
(7th Cir. 2006) .........................................................................................................15

*Vassalle v. Midland Funding LLC,* 708 F.3d 747, 755 (6th Cir. 2013)....................24

**Treatises**

PRINCIPLES OF THE LAW OF AGGREGATE LITIGATION § 3.07
(Am. Law. Inst. 2010). .............................................................................................20

## <u>JURISDICTIONAL STATEMENT</u>

The District Court exercised jurisdiction under 28 U.S.C. §§ 1331, 1337(a), and 1367. This Court's jurisdiction is based on 28 U.S.C. § 1291, which provides for jurisdiction over an appeal from a final decision of a United States District Court. The District Court entered final judgment on March 31, 2015. Appellant timely filed his Notice of Appeal on April 29, 2015.

## <u>STATEMENT OF ISSUES FOR REVIEW</u>

1.    Is the amount of the settlement fair, reasonable, and adequate upon careful scrutiny?

2.    Is the claims process for class members fair, reasonable, and adequate, and does it unreasonably require by class members the production of burdensome records that are unavailable to them?

3.    Did the settlement notification process provide adequate notice to class members?

4.    Does the settlement improperly awards cy pres recipients?

5.    Does the settlement give preferential treatment to class counsel via a contingency fee that is excessive and unreasonable?

## STATEMENT OF THE CASE

For purposes of brevity Appellant Mancinelli  incorporates by reference the Statements of the Case and Statements of Fact from co-appellant Andrews brief in case no. 15-1544, Doc. 19 at pgs. 16-19, and of the Self-Insured co-appellants in case no. 15-1551, Doc. 20 at pgs. 36-47.[1]

Defendant Blue Cross and Blue Shield of Michigan ("Blue Cross") perpetrated a massive scheme to fix prices for hospital care in Michigan over the past decade. Plaintiffs allege that Blue Cross entered into "Most Favored Nation" Agreements with over 70 Michigan hospitals. In the MFN Agreements, Blue Cross agreed to increase the amount it paid hospitals for hospital  services, in exchange for the  hospitals  agreeing  that they would charge other  insurers at least as much or more than what they charged Blue Cross.

Plaintiffs allege that the MFN Agreement scheme increased the amount paid for hospital services by over seven million individuals, self-insured entities, and insurance companies throughout Michigan (the class members) by an average of 16 percent from 2006 to 2014. The MFN Agreement scheme cost Michigan residents and businesses over $13 billion in additional hospital care expenses.

Neither this Appellant nor his spouse received any direct notice of the proposed

---

[1] References to page numbers from the co-appellants briefs will be to the page numbers generated by the Court of Appeals docketing system at the upper right hand corner of each page.

settlement despite having been BCBS insureds since approximately late 2000 and having received treatment in various Michigan hospitals during the past 15 years. Mancinelli Affidavit, RE 160-1 PGID 4643-4644. Rather, a post card was sent to my nine year old daughter, which because it was addressed to her she had looked at first and tossed in the recycling bin. This appellant happened to come across it while packing up the paper recycling. Because this appellant is an attorney he took a closer look at it then apparently the 99% of other card recipients did and investigated further. After researching the case, this Appellant filed his objection on September 24, 2014, RE 160, PGID 4634-4646.

With billions of dollars of liability at stake and the continuing negative publicity, Blue Cross was eager to resolve this case. The District Court approved a settlement of the lawsuit for only $30 million. Of the $30 million settlement fund, the District Court approved approximately $15 million to go to: class counsel for legal fees and reimbursement of expert witness fees; and to the named Plaintiffs for "incentive awards;" and the claims administrator to cover expenses. This leaves a net settlement fund of only $15 million for approximately seven million class members, most of whom have little or no understanding of what has transpired nor the extra costs that they have borne because of Blue Cross restraint of trade.

In an opinion and order dated March 31, 2015, the District Court overruled all of the objections and approved the proposed settlement. 3/31/15 Opinion and Order,

RE  213, PgID 6969-7017. The Self-Insured Appellants filed their Notice of Appeal on  April 29, 2015.  RE 219, PgID 7034-7035. Appellant Andrew filed his Notice of Appeal on April 29, 2015, RE 216, PgID 7028.  Mancinelli filed his Notice of Appeal on 29, 2015, RE 221, PGID 7037.

The settlement is not fair, reasonable, or adequate. The meager settlement amount, in light of the massive potential liability Blue Cross faces, is only fair if case is considered a nuisance case in which the class members have a very low likelihood of success on the merits, such that a meager recovery is better for the class than no recovery at all. However, the record  strongly suggests that the class members have a substantial chance of success on  the merits particularly in light that liability was so clear cut that the DOJ brought an action and the Michigan Legislature passed a statute to make sure MFN Contracts never happened again in the Michigan health care/insurance market. If anything this should have been a damages case. The parties have not met their burden of demonstrating otherwise. Nor has the District Court found otherwise.

Not only is the amount of the settlement fund totally inadequate, but the District Court failed to carefully scrutinize the settlement. Instead, the District Court engaged in a cursory analysis of the settlement, giving far too much deference to the opinion of class counsel, who stands to recover almost half of the settlement fund in the settlement.

The claims process under the settlement is unduly burdensome, requiring class members to submit detailed claims forms with information that is not necessary to process their claims. This has deterred countless potential class members from submitting claims. For the millions of potential class members who are insured by Blue Cross or whose self-insured plans are administered by Blue Cross, Blue Cross can determine claim eligibility and calculate the claims amount without the need for a claims form.

The notice procedure failed to elicit a response from over 99% of the class members. Notices were sent to grade school age children but not to their parents who were insured by Blue Cross or who paid for the medical services.

The settlement makes a cy pres award which is both excessive and unnecessary. Blue Cross already knows who the class members are, they sent out postcards to them. They could simply send them a check. Perhaps more troubling is the revelation that the primary cy pres recipient Free Clinics of Michigan is also a charity that Blue Cross regularly donates too. Thus there is appearance of if not an actual conflict of interest. This problem is compounded by the 3.5% cap to class members which limits how much actually can be paid to the few class members who actually received and understood the defective notice enough to actually file a claim.

Finally, the settlement pays excessive fees to class counsel. Almost half of the settlement fund is to be paid to class counsel. The settlement should be

rejected and the matter remanded to the District Court for further proceedings if not trial.

## SUMMARY OF ARGUMENT

The grounds for appeal by Appellant Mancinelli are as follows:

**1.    The settlement is inadequate.** Plaintiffs alleged that MFN Agreements between Blue Cross and Michigan hospitals increased the amount paid by class members for hospital services by approximately 16 percent–over $13 billion – during the eight-and-a-half years covered by the settlement. Blue Cross agreed in the settlement to refund class members between 1 percent and 3.5 percent of the money they paid to Michigan hospitals during the time period covered by the settlement. Using the parties' own agreed-upon refund amount, in order to pay a 1-percent refund to class members, the total amount of the settlement fund should have been approximately $850 million. However, the gross settlement fund was capped at $30 million, of which only a net $15 million would actually be distributed to class members. The amount of the settlement fund is woefully inadequate.

The settlement fund can only be considered reasonable if the class members have a very low likelihood of success on the merits. Yet, the record strongly supports that the class members had a viable claim against Blue Cross and a significant likelihood of success on the merits. Neither class counsel nor Blue Cross presented

evidence demonstrating that the class members' claims were so weak that such a meager settlement was in the best interest of the class members.

Rather than carefully scrutinizing the proposed settlement, the District Court engaged in only a cursory review of the reasonableness of the proposed settlement. The District Court made no independent assessment of the likelihood of success of Plaintiffs' claims, and instead spoke in generalities about the complexity of antitrust cases and deferred completely to class counsel's opinion that the settlement was in the best interest of the class. The District Court did not carefully scrutinize the amount of potential damages Plaintiffs might recover, choosing to accept the opinion of Plaintiffs' damages expert.

**2.    The claims process is unrealistic and unnecessarily burdensome.** The claims process is unnecessarily burdensome and has deterred countless potential class members from submitting claims. Moreover, for the millions of potential class members who are individually insured by Blue Cross or who are self-insured plans administered by Blue Cross, a claims form is completely unnecessary. Blue Cross has access to the information necessary to calculate the claims of class members whose health care is managed by Blue Cross. Individuals such as this appellant, simply do not have possession of medical records, invoices, or EOBs from nearly a decade ago. Few people save such items as a general practice and even those who do itemize their taxes and take a medical expense deduction, they

will likely not save those records beyond the seven year tax look back period for an audit. So how then will average citizen class member be able to put together a claim and why would they want to 3.5% cap that limits their recovery?  At the very least the 3.5% cap should be eliminated along with the cy pres award, so that those who have submitted a claim can receive a slightly more reasonable settlement payment.

  **3.**  **The settlement notification process is inadequate**. Of the seven million estimated potential class members, less than 27,000 – or 0.38 percent of potential class members – actually filed claims to participate in the settlement. Op. at 29, RE 213, PgID 6997.  This lack of participation in the settlement is indicative of the unfairness of the settlement to the potential class members, demonstrating not only that the claims process was unduly burdensome and deterred large numbers of potential class members from submitting claims, but that the settlement amount was so meager as to not be worth the time and energy of potential class members to fill out claims forms. Equally troubling is a notice procedure that gave notice to minors, even 8 year olds, while failing to give any notice to the parents of those minors despite their being insured by Blue Cross and paying for the medical services rendered to the minor. Mancinelli Affidavit, RE 160-1, PGID 4643.

  **4.**  **The settlement improperly and unnecessarily makes cy pres awards**. The 3.5% cap has the net effect of pushing a larger portion of the settlement

to a charity, Free Clinics of Michigan that Blue Cross favors and regularly gives donations too. The larger the portion of the settlement that is given to the cy pres recipient the less that Blue Cross might otherwise need to donate to that same charity in the future. A way should be found to distribute the extra funds to the class members, or at least find a charity that doesn't appear to have a conflict of interest or benefit Blue Cross.

**5.     The settlement gives preferential treatment to Plaintiffs' counsel.**

When contrasted with the net settlement amount to be distributed to class members, the amount of attorneys' fees and expenses to be paid to class counsel is excessive and creates a conflict of interest and a disincentive for class counsel to adequately represent the interests of class members. Similarly, the incentive awards to the named Plaintiffs far exceed the amount they would otherwise receive as class members, thus creating a conflict of interest and a disincentive for the named Plaintiffs to represent the interests of class members.

In short, the settlement is a good deal for Blue Cross, Plaintiffs' counsel, and the named Plaintiffs. It is a bad deal for the seven million potential class members, who will only receive perfunctory relief and would be much better off if their antitrust claims proceeded toward trial. The settlement should be overturned and the matter remanded to the District Court for further proceedings.

## **ARGUMENT**

## I.    STANDARD OF REVIEW

Appellant Mancinelli agrees with and incorporates by reference the Standard of Review from the brief of the self-insured co-appellants in case no. 15-1551, Doc. 20 at pgs. 50-52.

However regarding whether notice to the class satisfies due process, that is reviewed de novo. *Fidel v. Farley,* 534 F.3d 508, 513 (6th Cir.2008).

## II.    THE SETTLEMENT FUND IS GROSSLY INADEQUATE.

Appellant Mancinelli agrees with and incorporates by reference the arguments made on this in the brief of the self-insured co-appellants in case no. 15-1551, Doc. 20 at pgs. 52-66.

The fairness of the settlement must be evaluated primarily based on how it compensates class members. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 654 (7th Cir.2006).  This settlement primarily compensates class counsel and provides nothing to 99% of the class members. To the less than one percent of class members who filed a claim, the settlement provides an insignificant sum in comparison to Blue Cross likely liability and the damages caused by the MFN scheme.

### III.    THE CLAIMS PROCESS IS UNREASONABLY BURDENSOME.

Appellant Mancinelli agrees with and incorporates by reference the arguments made on this in the brief of the self-insured co-appellants in case no. 15-1551, Doc. 20 at pgs. 70-73.

The claim forms require the claimant to put down the date of service, the amount paid, and the hospital provider. The amount then received on the settlement is than a percentage of the total put on the claim form.  This Appellant believes that very few individual class members will be able to do this as a only a small percentage of the population itemize medical expenses on their tax returns, because it is an infrequent occurrence where the total spent would exceed 7.5% of AGI, consequently there is no reason to save the records, and thus many claimants will simply not have the records necessary to submit a claim that actually compensates them for their losses.

The insurance carriers have those records however, this Appellant has in the past obtained reports and printouts from Blue Cross summarizing medical services paid for under his insurance policy. A mechanism should be set up by which claimants who submit initial information, can obtain online or via email, a summary of the medical costs paid by their insurance carrier during the relevant time period, through which they then can complete the claim form.

The burdensome claims process established by Blue Cross and class counsel can only be seen as a cynical attempt to discourage most class members from submitting claims, in order to justify the extremely low settlement fund amount.

## IV.    THE SETTLEMENT NOTIFICATION PROCESS WAS INADQUATE

Appellant Mancinelli agrees with and incorporates by reference the arguments made on this issue in the brief of the self-insured co-appellants in case no. 15-1551, Doc. 20 at pgs. 30-31, and in the brief of co-appellant Andrews case no. 15-1544, Doc. 19 at pgs. 24-29.

Due process requires that notice to the class be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Due process, however, "does not require the notice to set forth every ground on which class members might object to the settlement." *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 630 (6th Cir.2007) 630. Rather, "[a]ll that the notice must do is 'fairly apprise the prospective members of the class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement serves their interests." *Id.* (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 122 (8th Cir.1975)).

In the present case it is undisputed that claims administrator sent out notice to minors without notice to their parents. Mancinelli Affidavit, RE 160-1, PGID 4643-4644. Advising an eight year old of a class action case does not fairly apprise the true class member, the insured or the contracting adult who paid for the health services.

## V.     THE SETTLEMENT IMPROPERLY AND UNNECESSARILY INCLUDES A CY PRES AWARD

Appellant Mancinelli agrees with and incorporates by reference the arguments made on this issue in the brief of co-appellant Andrews brief in case no. 15-1544, Doc. 19 at pgs. 29-30.

In a class action settlement, "[t]he *cy pres* doctrine allows a court to distribute unclaimed or non-distributable portions of a class action settlement fund to the 'next best' class of beneficiaries." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011). *Cy pres* distributions must account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members, including their geographic diversity. *Id.*

Direct distributions to settlement class members are preferred over *cy pres* distributions. *In re Baby Products Antitrust Litig.*, 708 F.3d 163, 173 (3d Cir. 2013). The private causes of action aggregated in this MDL proceeding—as in other class actions—were initiated to allow plaintiffs to recover compensatory damages for their injuries. *Cy pres* distributions imperfectly serve that purpose by substituting for such

direct compensation an indirect benefit that is, at best, attenuated and, at worse, illusory. *Id*. (citing *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 784–85 (7th Cir. 2004)). *Cy pres* distributions also present a potential conflict of interest between class counsel and their clients because including a *cy pres* distribution may increase a settlement fund, and with it, attorneys' fees, without increasing the direct benefit to the class. *In re Baby Products Antitrust Litig.*, 708 F.3d at 173. Where a court fears counsel is conflicted, it should subject the settlement to increased scrutiny. *Id*.

*Cy pres* may be used in class action settlements once all known settlement class members have been made whole or "where the proof of individual claims would be burdensome or distribution of damages costly." *Dennis v. Kellogg Co.,* 697 F.3d 858, 865 (9th Cir. 2012). Any leftover funds should first be distributed to known class members; only when it is not economically viable to do so should a court engage in a *cy pres* program. A court may approve a settlement that proposes a *cy pres* remedy even if such a remedy could not be ordered in a contested case.

However cy pres remedies have fallen out of favor recently and the road mines inherent in such remedies have become more apparent, which Chief Justice recently pointed out:

> "Granting review of this case might not have afforded the Court an opportunity to address more fundamental concerns surrounding the use of such remedies in class action litigation, including when, if ever, such relief should be considered; how to assess its fairness as a general matter; whether new entities may be established as part of such relief; if not, how existing entities should be selected; what the respective roles

of the judge and parties are in shaping a *cy pres* remedy; how closely the goals of any enlisted organization must correspond to the interests of the class; and so on. This Court has not previously addressed any of these issues.... In a suitable case, this Court may need to clarify the limits on the use of such remedies."

*Marek v. Lane,* —— U.S. ——, 134 S.Ct. 8, 9, 187 L.Ed.2d 392 (2013) (Roberts, C.J.).

Given these pitfalls the American Law Institute has also set forth principles to govern the use of *cy pres,* which limit the circumstances in which a court may choose *cy pres* over other distribution methods:

(a)    If individual class members can be identified through a reasonable effort, and the distributions are sufficiently large to make individual distributions economically viable, settlement proceeds should be distributed directly to individual class members.

(b)    If the settlement involves individual distributions to class members and funds remain after distributions (because some class members could not be identified or chose not to participate), the settlement should presumptively provide further distributions to participating class members unless the amounts involved are too small to make individual distributions economically viable or other specific reasons exist that would make such further distributions impossible or unfair.

(c)    If the court finds that individual distributions are not viable based on the criteria set forth in subsections (a) and (b),the settlement may utilize a *cy pres* approach. The court, when feasible, should require the parties to identify a recipient whose interests reasonably approximate those being pursued by the class. If, and only if, no recipient whose interests reasonably approximate those being pursued by the class can be identified after thorough investigation and analysis, a court may approve a recipient that does not reasonably approximate the interests being pursued by the class.

PRINCIPLES OF THE LAW OF AGGREGATE LITIGATION § 3.07 (Am. Law. Inst. 2010).

A *cy pres* distribution, therefore, should take place only when a court cannot distribute settlement funds to known class members. *See Nachshin*, 663 F.3d at 1038 ("In the context of class action settlements, a court may employ the *cy pres* doctrine to 'put the unclaimed fund to its next best compensation use, *e.g*., for the aggregate, indirect, prospective benefit of the class.'")

Courts do not have the authority to strike down only the *cy pres* portions of the settlement. *Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness," and we cannot "delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety." *Hanlon,* 150 F.3d at 1026 (internal quotation marks omitted). *See also Jeff D. v. Andrus,* 899 F.2d 753, 758 (9th Cir.1989) ("[C]ourts are not permitted to modify settlement terms or in any manner to rewrite agreements reached by parties."). Thus if the cy pres distribution in this case is improper then so is the whole settlement.

If class members are legally entitled to compensation on their underlying claims, and that compensation can be feasibly distributed to individual class members without unreasonable administrative burden, class counsel violates its fiduciary duties to put the financial interests of third parties ahead of their clients. And the court's "fiduciary responsibility" must prevent it from

ratifying such a provision. *Grant v. Bethlehem Steel Corporation*, 823 F.2d 20, 23 (2d Cir. 1987). The present cy pres distribution is a carve out of funds from the overall settlement and is not necessitated by or the result of the economic unviability of a distribution to class members. The cy pres distribution is a direct result of a cap placed on distributions to class members, the cap should be removed and to the extent that there must be a cy pres recipient it should be one that has any established relationship with Blue Cross such as the present recipient. If it is truly necessary to have cy pres a part of the settlement, first remove the 3.5% cap and then make the recipient the Medicaid trust fund for the state of Michigan, at least it would not have a conflict of interest.

## VI.    THE SETTLEMENT GIVES PREFERENTIAL TREATMENT TO CLASS COUNSEL WITH AN EXCESSIVE FEE AWARD

Appellant Mancinelli agrees with and incorporates by reference the arguments made on this in the brief of the self-insured co-appellants in case no. 15-1551, Doc. 20 at pgs. 74, and with those made in co-appellant Andrews brief in case no. 15-1544, Doc. 19 at pgs. 31-32.

Standing alone, an attorneys' fee award of up to $10 million to Plaintiffs' counsel would not be unreasonable in this case—if Plaintiffs' counsel had secured an appropriate settlement fund amount for the class. However, the substantial amount to be paid to class counsel as part of the settlement, when compared to the

meager net amount to be paid to class members, creates a substantial conflict of interest between class counsel and the class members that raises a serious risk of fraud and collusion.

Under the District Court's order, class counsel is to be paid $10 million in attorneys' fees and reimbursed an additional $3.5 million for expenses, primarily related to class counsel's retained expert. As such, the settlement pays almost half of the $30 million settlement fund to class counsel. In comparison, the amount to be paid to class members—an average of $2 per potential class member—is perfunctory.

This appellant relies on *In re Dry Max Pampers Litigation,* 724 F.3d 713 (6th Cir.2013), and *In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935 (9th Cir.2011). In *Pampers*, this Court reversed the trial court's approval of a class settlement because the settlement gave preferential treatment to class counsel but only perfunctory relief to unnamed class members. See *Pampers*, 724 F.3d at 721. Although the settlement awarded class counsel a fee of $2.73 million, "counsel did not take a single deposition, serve a single request for written discovery, or even file a response to [the defendant's] motion to dismiss." *Id.* at 718. On the other hand, the unnamed class members who were allegedly injured as a result of purchasing Pampers brand diapers containing "Dry Max Technology," would have been awarded only injunctive relief in the form of a reinstated diaper refund program, changes to the labels on Pampers' boxes, and changes to the Pampers' website. *Id.* at 716–18.

The defendant in that case also agreed to contribute $400,000 to an undetermined pediatric resident training program and the American Academy of Pediatrics. *Id.* at 716. Notably, in determining that the settlement gave preferential treatment to class counsel, the Sixth Circuit characterized as negligible the value of the injunctive relief awarded to the class. The same is true in the present case. This is a settlement that provides negligible value to the class, or even to the actual class claimants who submitted claims, in light of the substantial harm that was done to the price of health care in Michigan for nearly a decade.

The reality is that this settlement benefits class counsel vastly more than it does the consumers who comprise the class.   The conclusion is unavoidable: this settlement gives preferential treatment to class counsel while only perfunctory relief to unnamed class members." *Vassalle v. Midland Funding LLC,* 708 F.3d 747, 755 (6th Cir. 2013). This Court has clearly held that "such inequities in treatment make a settlement unfair." *Id.*  This is an independent reason for rejecting the settlement.

## <u>CONCLUSION</u>

The District Court failed to carefully scrutinize the class action settlement. This is particularly problematic given the numerous badges of potential fraud or collusion by the parties, including: (1) the low amount of the settlement fund in light of the massive potential liability faced by Defendant; (2) the payment of almost half of the settlement fund to class counsel; (3)  allowing an effective notice system

to the class members; (4) the establishment of a highly burdensome claims process which deterred over 99 percent of potential class members from participating in the settlement; and (5) allowing an excessive cy pres award that unnecessarily diverts settlement proceeds to a quasi-insider charity of the defendant and thereby reduces donations that the defendant would otherwise make to that charity.

The settlement clearly is in the best interest of Blue Cross, class counsel, and the named Plaintiffs. It is not in the best interest of the class members. Appellant requests that the Court reverse the District Court's March 31, 2015 Opinion and Order Regarding Fairness Hearing, Order Approving Settlement, and entry of Final Judgment, remanding the case to the Eastern District of Michigan for trial on the merits.

Dated: August 24, 2015                    Respectfully submitted:

**Scott Mancinelli, Appellant**

By: */s/ Scott Mancinelli*_____
     156 West Washington Avenue
     Zeeland, MI 49464
     (616) 990-0453

## <u>RULE 32(a)(7)(C) CERTIFICATION</u>

Pursuant to FRAP 32(a)(7)(C), I hereby certify that the foregoing Appeal Brief (exclusive of content excluded pursuant to FRAP 32(a)(7)(B)(iii) and 6th Cir. R. 32(b)) contains 5663 words, per the word processing software used to prepare the brief. This brief complies with the typeface requirements of Fed. R. App. 32(a)(S) and the type style requirements of Fed. R. App. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.

Dated: August 24, 2015                    Respectfully submitted:

**Scott Mancinelli, Appellant**

By: <u>/s/ *Scott Mancinelli*</u>
156 West Washington Avenue
Zeeland, MI 49464
(616) 990-0453

## CERTIFICATE OF SERVICE

I, Scott Mancinelli, do hereby certify that on this 24th Day of August 2015, I electronically filed the foregoing document with the Clerk of the Court using the ECF system.

Dated: August 24, 2015              Scott Mancinelli, Appellant

By: /s/ *Scott Mancinelli*
156 West Washington Avenue
Zeeland, MI 49464
(616) 990-0453

**Addendum of Designations of Relevant District Court Documents**

As 6th Cir. R. 30(f)(1) requires, Mancinelli designates the following district court documents as relevant to this appeal that are referenced in this brief or in the briefs of the other appellants with whom Mancinelli has joined:

| RECORD ENTRY # | DESCRIPTION OF DOCUMENT | PAGE ID# |
|---|---|---|
| 72 | Consolidated Amended Complaint | 884-935 |
| 80 | Motion to Dismiss Consolidated Amended Complaint | 1002-1018 |
| 102 | Opinion and Order Denying Motion to Dismiss | 1265-1273 |
| 127 | Defendant's Opposition to Motion to Add and Drop Named Plaintiffs for the Proposed Class | [sealed] |
| 133 | Motion for Class Certification and Appointment of Class Counsel | [sealed] |
| 139 | Defendant's Response to Motion for Class Certification and Appointment of Class Counsel | [sealed] |
| 140 | Motion to Exclude Expert Testimony of Dr. Jeffrey Leitziner | [sealed] |
| 148-1 | Class Action Settlement Agreement | 4221-4321 |
| 151 | Order Granting Preliminary Approval to Proposed Class Settlement | 4417-4425 |
| 159 | Objection to Proposed Class Action Settlement | 4626-4632 |
| 160 | Mancinelli Objection | 4634-4641 |
| 160-1 | Mancinelli Affidavit | 4643-4644 |
| 160-2 | Class Notice Card to Mancinelli's 8 year old daughter | 4645 |

| 161 | Joint Objection to Proposed Settlement | 4648-4735 |
| 161-1 | Center for Medicare & Medicaid Services Data on Hospital Care Expenditures, by State | 4705-4706 |
| 161-2 | Center for Medicare and Medicaid Services Data on Hospital Care Expenditures, by Source of Funds | 4707-4708 |
| 161-3 | Supplemental Disclosures of Aetna Inc. | 4709-4713 |
| 161-5 | E-mails between Petoskey Plastics and Blue Cross | 4725-4727 |
| 161-7 | Stipulated Motion and Brief to Dismiss Without Prejudice | 4732-4734 |
| 163 | Objection to Class Action Settlement by Andrews | 4772-4821 |
| 166 | Motion to Intervene for the Limited Purpose of Unsealing Records | 5199-5294 |
| 166-4 | Defendant's Opposition to Motion to Add and Drop Named Plaintiffs for the Proposed Class (redacted) | 5247-5251 |
| 166-5 | Motion for Class Certification and Appointment of Class Counsel (redacted) | 5253-5279 |
| 166-6 | Defendant's Response to Motion for Class Certification and Appointment of Class Counsel (redacted) | 5281-5286 |
| 166-7 | Defendant's Motion to Exclude the Expert Testimony of Dr. Jeffrey Leitinzer | 5288-5294 |
| 169 | Plaintiff's Motion for Final Approval of Settlement | 5301-5395 |
| 199 | 11/12/14 Transcript of Fairness Hearing | 6361-6450 |
| 213 | Opinion and Order Regarding Fairness Hearing | 6969-7017 |
| 214 | Order Approving Settlement | 7018-7026 |
| 215 | Final Judgment | 7027 |

| 216 | Notice of Appeal by Andrews | 7028-7029 |
|-----|-----------------------------|-----------|
| 219 | Notice of Appeal by Self Insured Appellants | 7034-7035 |
| 221 | Notice of  Appeal by Mancinelli | 7037 |